## BURFENNING v. CHICAGO, ST. PAUL, MINNEAPOLIS AND OMAHA RAILWAY COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 277. Submitted May 1, 1896. — Decided May 18, 1896.

While it is well settled that, in the administration of the public land system of the United States, questions of fact are for the consideration and judgment of the Land Department, and its judgment thereon is final, it is equally true that when, by act of Congress, a tract of land has been reserved from homestead and preëmption, or dedicated to any special purpose, proceedings in the Land Department in defiance of such reservation or dedication, although culminating in a patent, transfer no title; and the patent questioned in this case comes within that general rule of invalidity.

On March 20, 1890, plaintiff in error commenced his action in the District Court of Hennepin County, Minnesota, to recover possession of certain islands situated in the Mississippi River and within the territorial limits of the city of Minneapolis. After answer and trial had in that court, which resulted in a judgment for the defendant, and which judgment was affirmed by the Supreme Court, this writ of error was sued out.

*Mr. James W. Lawrence* for plaintiff in error.

*Mr. Thomas Wilson* for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

The title of plaintiff in error, plaintiff below, rests on a patent from the United States, of date June 13, 1884. This patent was issued under Rev. Stat. § 2306, granting additional homestead lands to soldiers and sailors who served in the war of the rebellion. The record discloses that on April 7, 1873, John Van Anker entered as a homestead at Cawker City, Kansas, the E. $\frac{1}{2}$ of N. W. $\frac{1}{4}$ section 12, T. 3, R. 12, and W. $\frac{1}{2}$ of N. W. $\frac{1}{4}$ section 7, T. 3, R. 11, containing $155\frac{11}{100}$ acres. Under the statute referred to he was entitled to enter $4\frac{89}{100}$ acres as an additional homestead, and this without any previous settlement or occupancy thereof. On August 19, 1882, a certificate of this right was issued to him by the acting Commissioner of the General Land Office. On March 27, 1883, he applied under that section to enter these islands, containing $1\frac{95}{100}$ acres, and paid therefor the sum of $5.20, total of fees and compensation. This application being sustained, the patent was issued. Under a power of attorney, dated June 7, 1882, a date prior to that of the certificate of his right to the additional entry, a deed was made by his attorney. in fact, B. M. Smith, to the plaintiff. The averment in the complaint, which was supported by the testimony offered at the trial, was that the value of the land was $20,000.

The invalidity of this patent is alleged, under the second clause of section 2258 and section 2289, Revised Statutes, by which are excluded from preëmption and homestead "lands included within the limits of any incorporated town or selected as the site of a city or town." Counsel for plaintiff in error insists that the patentability of all public lands is one for the Land Department of the United States to determine, and that its determination in this case, evidenced by the issue of the patent, is conclusive upon the question that these

lands were not at the time that the patentee's rights were initiated within the limits of any city and were subject to homestead.

It has undoubtedly been affirmed over and over again that in the administration of the public land system of the United States questions of fact are for the consideration and judgment of the Land Department, and that its judgment thereon is final. Whether, for instance, a certain tract is swamp land or not, saline land or not, mineral land or not, presents a question of fact not resting on record, dependent on oral testimony; and it cannot be doubted that the decision of the Land Department, one way or the other, in reference to these questions is conclusive and not open to relitigation in the courts, except in those cases of fraud, etc., which permit any determination to be reëxamined. *Johnson* v. *Towsley*, 13 Wall. 72; *Smelting Company* v. *Kemp*, 104 U. S. 636; *Steel* v. *Smelting Company*, 106 U. S. 447; *Wright* v. *Roseberry*, 121 U. S. 488; *Heath* v. *Wallace*, 138 U. S. 573; *McCormick* v. *Hayes*, 159 U. S. 332.

But it is also equally true that when by act of Congress a tract of land has been reserved from homestead and preëmption, or dedicated to any special purpose, proceedings in the Land Department in defiance of such reservation or dedication, although culminating in a patent, transfer no title, and may be challenged in an action at law. In other words, the action of the Land Department cannot override the expressed will of Congress, or convey away public lands in disregard or defiance thereof. *Smelting Co.* v. *Kemp*, 104 U. S. 636, 646; *Wright* v. *Roseberry*, 121 U. S. 488, 519; *Doolan* v. *Carr*, 125 U. S. 618; *Davis's Admr.* v. *Weibbold*, 139 U. S. 507, 529; *Knight* v. *U. S. Land Ass'n.*, 142 U. S. 161.

The case of *Morton* v. *Nebraska*, 21 Wall. 660, is very closely in point. In that case the plaintiff held a patent for lands in Nebraska which were saline lands, and noted as such on the field books, although the notes thereof had not been transferred to the register's general plats. The preëmption act of September 4, 1841, c. 16, 5 Stat. 453, 456, declared that "no lands on which are situated any known salines or mines shall

be liable to entry." Notwithstanding this prohibition patents were issued for the lands, and it was held that they were absolutely void, the court saying, p. 674: "It does not strengthen the case of the plaintiffs that they obtained certificates of entry, and that patents were subsequently issued on these certificates. It has been repeatedly decided by this court that patents for lands which have been previously granted, reserved from sale, or appropriated, are void. The executive officers had no authority to issue a patent for the lands in controversy, because they were not subject to entry, having been previously reserved, and this want of power may be proved by a defendant in an action at law."

In that case it will be observed that the records disclosed that the lands were saline lands when the proceedings in the Land Department were had. So the case was not one in which the department determined a fact upon parol evidence, but one in which it acted in disregard of an established and recorded fact. In *Root* v. *Shields*, 1 Woolworth, 340, decided by Mr. Justice Miller, at the circuit, it was held that a patent for lands within the limits of the city of Omaha was void. It is true that case was one in equity and not in law, but so far as respects the decision that the patent was void, it is exactly in point.

Now, applying these authorities to the case at bar, the city of Minneapolis was incorporated by an act of the legislature of that State, declared in its terms to be a public act, which took effect on March 8, 1881. The record of the Land Department shows that the right of the patentee was initiated on March 27, 1883, for on that date he made his application to enter the lands. This is not a case in which the patent was founded upon actual occupancy for homestead purposes, or in which nothing appearing but the patent itself there might be uncertainty as to the time at which the patentee's rights were initiated — whether before or after the incorporation of the city. It is one where, affirmatively and by the record, it is disclosed that there was no pretence or semblance of claim on the part of the patentee until two years subsequent to the organization of the city, and in that respect differs from *Texas*

*& Pacific Railway* v. *Smith,* 159 U. S. 66, in which, on account of the absence of all testimony, there was suggested an uncertainty as to the time at which, by way of relation, the patentee's rights took effect. The case, therefore, comes within the general rule announced as to the invalidity of a patent issued in defiance of the expressed will of Congress.

The judgment of the Supreme Court of Minnesota was right, and it is

*Affirmed.*