## CANDADO STEVEDORING CORPORATION v. LOCKE.

### No. 5503.

District Court, E. D. New York.

Jan. 25, 1932.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City, for plaintiff.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg and George H. Beaubian, Asst. U. S. Attys., both of Brooklyn, N. Y., of counsel), for defendant.

GALSTON, District Judge.

This is a suit in equity for an injunction restraining the defendant from enforcing a certain award made by the defendant under the Longshoremen's and Harbor Workers' Compensation Act (U. S. Code, title 33, chapter 18 [33 USCA §§ 901–950]) to one Charles Blumberg; and to set aside such award as null and void.

It appears that on or about July 14, 1930, Blumberg, while employed by the plaintiff on board the steamship Horace Luckenbach, sustained certain injuries. Thereafter he filed an employee's claim for compensation under the provisions of the aforesaid act; and he was paid compensation, in the aggregate amount of $460, at the rate of $20 per week from July 14, 1930, to the 22d day of December, 1930.

On April 18, 1931, after a hearing on the application of Blumberg for further compensation, the defendant made and filed a compensation order which in substance directed the plaintiff to restore the claimant to the compensation roll as a partial disability without earning capacity, and to pay him compensation at the rate of $20 per week from December 22, 1930, to the date of the order; and the order further directed that the plaintiff pay compensation to Blumberg from April 18, 1931, under the provisions of section 8 (c) (21) of the act (U. S. C. title 33, § 908 (c) (21) 33 USCA § 908 (c) (21) so long as partial disability continued in fact. The said order also directed certain payments to be made by the plaintiff to Blumberg in reimbursement of medical services rendered by his physician, Dr. Louis Gelb, and also further payments to Blumberg for such additional medical or surgical attendance and treatment as the nature of the injury might require; and finally directed an attorney's

fee of $50 to be deducted from the award and paid to Blumberg's attorney.

The gist of the complaint is that this order is not in accordance with the law, on the grounds that: (a) The payment of $20 per week from December 22, 1930, to April 18, 1931, is not the proper rate, since that is the rate at which Blumberg would have been paid had his disability been total, whereas by the terms of the order the disability is said to be only partial; (b) because the defendant in his compensation order did not determine as a fact the percentage of Blumberg's disability and because plaintiff is not empowered by any statute to determine the extent of such disability; (c) that the payment directed to the physician, Gelb, was contrary to law, because the physician did not within twenty days following the first treatment furnish the plaintiff and the defendant with a report of such treatment on a form prescribed by the Commissioner; and (d) finally, because the compensation order is not in accordance with the facts as they existed at the time the compensation order was made.

Authority for the institution of this suit is sought to be established in U. S. Code, title 33, § 921, subdivision b, 33 USCA § 921 (b), which provides in part as follows: "If not in accordance with law, a compensation order may be suspended or set aside, in whole or in part, through injunction proceedings, mandatory or otherwise, brought by any party in interest against the deputy commissioner making the order, and instituted in the Federal district court for the judicial district in which the injury occurred (or in the Supreme Court of the District of Columbia if the injury occurred in the District). The orders, writs, and processes of the court in such proceedings may run, be served, and be returnable anywhere in the United States."

In a case, Independent Pier Co. et al. v. Norton, Deputy Commissioner, etc., et al., 54 F.(2d) 734, it was held in substance that a federal District Court, on a bill for review of the award of a deputy commissioner under the act in question, may not review the case on the merits and render a different judgment on the same facts, but is limited to an inquiry as to whether on the law and the facts the action of the deputy commissioner is wholly unsupported by the evidence, or clearly arbitrary and capricious. The only jurisdiction conferred on the court by the act is to review and reverse the decision of the award of the deputy commissioner, if it "is not in accordance with the law."

It is not contended, so far as I can adduce from the argument of counsel, that the Commissioner's act was either arbitrary or capricious. The sole question, therefore, presented is whether it was in accordance with the law.

Now it is urged by the plaintiff that the two phrases "partial disability" and "without earning capacity" are repugnant to each other, because, if one is but partially disabled, one may at least have some earning capacity.

In the award the commissioner finds that the claimant Blumberg admitted that he was able to do light work after December 22, 1930, the period at which temporary total disability ended, and did in fact apply to the plaintiff for such work, but was told that there was no position for him.

The commissioner also found that the claimant was suffering from a serious condition of the left half of the head due to a mastoiditis or infective process which involved the bones of the mastoid region behind the left ear. He also found as a fact that such infective process began to show developments about two months following the accident, and that it could be attributed to no other cause.

The transcript of the record of the hearing of April 16, 1931, reveals ample competent evidence to support the findings of fact of the commissioner; and the disability which was complained of at that time entitles Blumberg to compensation as provided for in the act. The commissioner found a serious disability, but he could not determine how long that disability would continue; and it was of such nature that he could not perform the kind of labor which he had been accustomed to perform or similar labor, and, indeed, was denied by the plaintiff the kind of light labor that he was able to perform.

Title 33, § 908, of the Code (section 8 of the act), classifies compensation for disability, and refers to: (a) Permanent total disability; (b) temporary total disability; (c) permanent partial disability; (e) temporary partial disability.

It is true, as the plaintiff urges, that there is not included in the above classes "a partial disability without earning capacity"; but the commissioner found as a fact that the claimant is unable because of his injuries to earn the wages which he was receiving at the time of the injury in the same or any other employment. That is the disability defined in section 902 of the Code (section 2 of the act). The evidence also shows that he

did no work from December 22, 1930, to April 16, 1931, except a little work at home. He received no compensation for any work performed since his injury; at least there is no proof of any earnings.

■ Whether the language of provision (1) of the order is in all respects felicitous perhaps may be questioned; but, in striking at the heart of the matter and in endeavoring to meet the intention of the act, it is evident that the commissioner, having found that the claimant because of his disability could not perform the kind of labor that he had been performing at the time of the injury (and since he in fact earned nothing from the light work that, perhaps, he was physically able to perform), described him as a permanent partial disability without earning capacity during the period up to April 18, 1931, whereas in point of fact the claimant could have been placed within the temporary total disability group.

■■ It does not seem from a reading of the act that, simply because the claimant had a latent power to perform some light work entirely different from that which he was able to perform at the time of the accident, he should be precluded from compensation under the act. Such an interpretation would defeat the purposes of the legislation. It cannot be ignored that the act is in accordance with the modern trend of social legislation. Statutes of this kind should be construed liberally enough at least to sustain their objects.

In matters of this kind, it is important for courts to avoid such technical constructions of such an act, as is here under discussion, as would defeat the very purpose of the act.

But few cases have construed the act, but that such view should prevail is indicated by Judge Neterer in Rothschild & Co., Inc., et al. v. William Marshall, Deputy Commissioner, etc., et al., 56 F.(2d) 415, United States District Court for the Western District of Washington, Northern Division: "It is obvious that the Congress intended that the Longshoremen's Act (33 USCA §§ 901–950) be construed liberally in behalf of the injured workers, and has created the deputy commissioner a special tribunal not bound by common law or statutory rules of evidence or by technical or formal rules of procedure to 'make such investigation or inquiry or conduct such hearing in such manner as to best ascertain the rights of the parties.'"

■ The plaintiff urges as a second ground that the second directory provision of the order should not be enforced because under the award the deputy commissioner did not determine the percentage loss of earning power, and because the plaintiff has no power under the act to determine the extent of the claimant's earning capacity.

This argument carries no conviction. The provision of the order complained of directs "that the defendant employer pay compensation in the future under the provision of section 8 (e) (21) of the Act, so long as partial disability shall continue in fact."

Plaintiff seeks to distort this language to mean that an obligation is imposed upon the employer to determine the extent of the decrease in the earning capacity of the claimant. On the contrary, the act itself establishes the rate of payment as 66⅔ per cent. of the difference between the claimant's weekly average wages and his wage-earning capacity thereafter in the same employment or otherwise.

The average weekly wage for this claimant was $30 per week. As a result of the injuries sustained, he now earns nothing either in the same employment or similar employment. Two-thirds of the difference between the two is the sum of $20 per week, which was the amount directed to be paid by the order of April 18th, 1931.

I find nothing in the act which compels the commissioner to determine what the percentage of disability was. That award was not final in its nature, for section 908 (e), subdivision 21 of the Code (section 8 (e) subd. 21 of the Act), provides that the award shall be "payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the deputy commissioner on his own motion or upon application of any party in interest."

■ The objection to the direction of the payment to claimant because of medical services rendered for him by Dr. Louis Gelb is an objection, however, that can be sustained, because it nowhere appears in the transcript of record that within twenty days following the first treatment given by the physician did he furnish to the employer and to the deputy commissioner a report of the injury and treatment on a form prescribed by the commissioner, as required by section 7 of the act (section 907, title 33, U. S. C. [33 USCA § 907]).

The order of the award may be modified by the elimination of the direction of payment of the sum of $50; but in all other respects is sustained.

Submit decree on notice.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.