**WHEELER SHIPYARD, Inc., et al. v. LOWE, Deputy Commissioner.***

No. 7405.

District Court, E. D. New York.

Oct. 25, 1935.

*Decree affirmed 82 F.(2d) 1022.

See, also, 10 F.Supp. 32.

MacIntyre, McNally & Downey, of New York City (Warren C. Tucker, of Utica, N. Y., and Francis J. MacIntyre, of New York City, of counsel), for complainants.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y. (Clarence Wilson, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for defendant.

MOSCOWITZ, District Judge.

This is an action by Wheeler Shipyard, Inc., and Utica Mutual Insurance Company to review the compensation order of Hon. Samuel S. Lowe, deputy commissioner of the United States Employees' Compensation Commission, Second Compensation District, dated October 3, 1934.

The deceased, Thomas Murphy, for about five years preceding his death on July 1, 1933, had performed services for the employer as a painter, and had done such other work about the employer's yard as he was called upon to do. The commissioner has found the following facts: "That sometimes he painted boats which were in the water, sometimes he painted boats in the yard, sometimes he drove the employer's truck and on approximately six occasions during the period of his employment, he had delivered old boats which had been repaired, or new boats which had been sold to the employer's customers, at such times piloting the boats to their destinations; that he worked and was paid on an hourly basis at the rate of 50¢ an hour; that on the morning of July 1, 1933, he worked about the employer's yard until 11:00 a. m., cleaning and painting and refueling various boats in the employer's yard; that he was then instructed to take a motor boat which the employer had sold and deliver it to the customer at Rockaway, Long Island; that he was also instructed that upon completion of this assignment, he was to join a fellow-worker, Harmitz, at Long Beach, Long

Island, and assist him to tow back to the employer's yard two other motor boats; that the deceased left the employer's yard about 11:00 a. m., in the boat which he was to deliver to Rockaway; that Harmitz left the yard at about the same hour in another boat named the 'Sound Wave,' which was the property of the shipyard, with instructions to meet the deceased at Long Beach; that the men did meet at Long Beach, after which the 'Sound Wave' was tied up and both men proceeded to Rockaway in the boat piloted by the deceased, where delivery to the employer's customer was made; that both men then returned to Long Beach by bus; that the two motor boats which were to be returned to the employer's yard were picked up and made fast by lines to the 'Sound Wave' and the return journey began with Harmitz at the wheel; that the waters to be traversed from Long Beach to the employer's yard in Brooklyn were Great South Bay, Debs Inlet, Atlantic Ocean, New York Bay, Gravesend Bay and Coney Island Creek; that before the journey was completed and while the boats were still in the Atlantic Ocean about two miles off shore, a storm arose during which one of the boats under tow broke loose from the 'Sound Wave'; that Harmitz called upon the deceased to take the wheel of the 'Sound Wave' while he attempted to secure the other boat; that in his efforts to accomplish this, Harmitz was washed overboard; that he succeeded in reaching the second boat under tow, and pulled himself aboard, taking shelter in the cabin from the severe storm for about three-quarters of an hour; that he was then able to board the 'Sound Wave,' whereupon he found that the deceased had disappeared; that the deceased's body was later recovered and that it was established that he had died from drowning; that death was due to an accidental injury which arose out of and in the course of and was incidental to his employment as a shipyard-worker; that written notice of death was not given within thirty days, but that the employer had knowledge of the death and has not been prejudiced by the lack of such written notice; that the average annual earnings of the deceased herein at the time of his death amounted to the sum of $1,-424.84; that Anna Murphy, born on December 23, 1900, and married to the deceased on June 24, 1928, is the surviving wife of the deceased; that Thomas Murphy born on February 2, 1934, is the posthumous child of the deceased, and that the surviving wife and child are entitled to death benefits under the said Act; that the funeral expenses were $609.00 and have been paid by Anna Murphy; that the death benefits accrued from July 1, 1933 to September 7, 1934 inclusive, to which the said Anna Murphy is entitled, amount to $594.-58 (62 weeks at $9.59 per week; that the accrued death benefits to which the said Anna Murphy is entitled for the support of Thomas Murphy, from February 2, 1934 to September 7, 1934 (31½ weeks at $2.74 per week) amount to $85.33; that the total death benefits accrued to September 7, 1934 inclusive are $679.91; that the employer and carrier have paid nothing to the claimants as death benefits."

An award has been made in favor of the widow and child of the deceased.

The plaintiffs claim that the deceased was a seaman and not an employee, as defined by the Longshoremen's and Harbor Workers' Compensation Act, as follows:

Section 2 (33 U.S.C.A. § 902):

"The term 'employee' does not include a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.

"The term 'employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any dry dock)."

Section 3 (33 U.S.C.A. § 903):

"Compensation shall be payable under this Act [chapter] in respect of disability or death of any employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law."

I believe the deputy commissioner reached the right conclusion, that the deceased was a painter in the shipyard paid on an hourly basis, and did not become a seaman by boarding or piloting a motorboat for a few hours. His going on the boat was merely incidental to his employment. He was not employed as a seaman, but as a painter. Longshoremen, stevedores, etc., who, in the course of their duties, leave dry land to go on navigable waters for temporary work thereon, do not become seamen.

De Wald v. Baltimore & Ohio R. Co. (C. C.A.) 71 F.(2d) 810; Seneca Washed Gravel Corporation et al. v. McManigal et al. (C.C.A.) 65 F.(2d) 779.

■ The findings of fact by the deputy commissioner that the deceased was a painter will not be disturbed. The evidence sustains his findings. The sole function of the court is to determine whether the deputy commissioner's action was in accordance with the law. Calabrese v. Locke (D.C. N.Y.1931) 56 F.(2d) 458; Pocahontas Fuel Company, Inc., v. Monahan (D.C.Me. 1929) 34 F.(2d) 549, affirmed (C.C.A.May, 1930) 41 F.(2d) 48.

Decree for defendant. Settle decree on notice.